# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LEANNE BANKERT, | CASE NO. 5:18-cv-2016 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE DAVID A. RUIZ |
| ANDREW SAUL, *Comm'r of Soc. Sec.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Leanne Bankert (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13 & 14). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On January 12, 2016, Plaintiff filed her applications for POD and DIB alleging a disability onset date of May 11, 2015. (Transcript ("Tr.") 188-194). On September 2, 2016, Plaintiff filed an application for SSI alleging her disability began on August 23, 2016. (Tr. 195-201). The

applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 108-126). Plaintiff participated in the hearing on November 21, 2017, was represented by counsel, and testified. (Tr. 38-75). A vocational expert ("VE") also participated and testified. *Id*. On January 18, 2018, the ALJ found Plaintiff not disabled. (Tr. 18-32). On July 10, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On September 4, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 12).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in evaluating the opinion of Plaintiff's treating neurologist; and, (2) the ALJ erred in evaluating Plaintiff's credibility. (R. 11).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Prior to the alleged onset date, on October 31, 2014, Plaintiff returned to the Neurology Clinic and was seen by Jose M. Casanova, M.D., Ph.D. (Tr. 522). She carried a diagnosis of "chronic migraine without aura, intractable, no status." *Id*. Plaintiff reported her headaches were well controlled and denied any side effects from her medications. *Id*. Plaintiff received Botox injections into the skull and neck muscles. *Id*.

On May 15, 2015, after the alleged onset date, Dr. Casanova administered Botox injections.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

(Tr. 518). Plaintiff again reported doing well, but her headaches remained unchanged. *Id*.

On July 12, 2015, Plaintiff presented to the ER with a migraine beginning at 10 a.m. that day. (Tr. 360). She was discharged the same day. (Tr. 370).

On September 2, 2015, Plaintiff presented for Botox injections and reported that her headaches remained unchanged. (Tr. 514). She denied any visits to the ER. *Id*.

On September 21, 2015, Plaintiff was referred by Dr. Casanova to Robert Felden, D.O., who noted Plaintiff had a "migraine headache for several months now," for a lidocaine infusion. (Tr. 537). Dr. Felden noted that Plaintiff had received such infusions in the past and had "done well" with diminution of her overall headache pain. *Id*.

On November 25, 2015, Dr. Casanova administered Botox injections. (Tr. 512). Plaintiff again reported doing well. *Id*. She reported significant stress since working for AultCare, but denied missing any days of work or visits to the ER. *Id*.

On January 11, 2016, Plaintiff was seen by Dr. Hiestand for follow-up of her diabetes mellitus type II, hypertension, mild hyperlipidemia, and chronic headaches. (Tr. 687). She was noted as having a "little bit" of paresthesia in her fingertips and toes for the past couple years. *Id*. She was doing "fairly well" with her headaches and periodically taking Lorazepam. *Id*. Dr. Hiestand was uncertain whether the paresthesia was attributable to Topamax or diabetes. *Id*.

On February 24, 2016, Dr. Casanova administered Botox injections. (Tr. 699, 721). Plaintiff reported that "her headaches appear to be well controlled," and she denied any side effects from medications. *Id*. She denied any visits to the ER. *Id*.

On April 30, 2016, Plaintiff presented to the ER with a headache that she stated persisted for about a week and a half. (Tr. 711). Stephen Miller, D.O. examined Plaintiff; the results were unremarkable. *Id*. She reported last being in the ER in July of 2015 with similar symptoms. (Tr.

712). She was given Reglan and Toradol. (Tr. 714).

On June 9, 2016, Plaintiff was seen in pain management reporting an acute migraine of three months duration. (Tr. 724). Dr. Felden administered an intravenous infusion of Propofol and Lidocaine. (Tr. 724-725).

On August 26, 2016, Dr. Casanova again administered Botox injections. (Tr. 742). Plaintiff was "doing well," her headaches appeared "well controlled," and she denied any side effects from medications. *Id*.

On November 23, 2016, Dr. Casanova again administered Botox injections. (Tr. 750). Plaintiff reported that her headaches were "well controlled," that her headaches improved after she stopped working at Aultman, and she denied any side effects from medications. *Id*.

On February 15, 2017, Dr. Casanova again administered Botox injections. (Tr. 748). Plaintiff again reported she was "doing well." *Id*. She denied any new problems and reported "at least 50% improvement with [Botox] injections." *Id*.

On August 2, 2017, Dr. Casanova again administered Botox injections. (Tr. 857). Plaintiff again reported she was "doing well." *Id*. She denied any new ER visits, reported "at least 50% improvement with [Botox] injections," and reported only two headaches since her last injections. *Id*.

Eleven days later, on August 13, 2017, Plaintiff presented to the ER reporting a migraine headache of two to three weeks in duration. (Tr. 849). Plaintiff described her current pain as 6/10 and that her medications were not helping. Id. Plaintiff was given intravenous fluids and a migraine cocktail. (Tr. 851). Later the same day, she reported feeling much improved with her headache at 1-2/10 in severity. *Id*.

On October 25, 2017, Dr. Casanova administered Botox injections. (Tr. 856). Plaintiff

4

again reported she was "doing well." *Id*. She denied any new problems or any ER visits. *Id*.

On November 3, 2017, Plaintiff reported to Dr. Casanova that neither her Norco nor her Dilaudid medications work very well. (Tr. 858). If she had to choose, she preferred Norco at increased doses. (Tr. 858). Dr. Casanova noted Plaintiff had been taking Norco for eleven years and believed it better to switch pain medications. (Tr. 858). Plaintiff was started on Oxymorphone. (Tr. 860).

Three days later, on November 6, 2017, Plaintiff presented to the ER reporting a migraine headache that started ten days earlier. (Tr. 865). Plaintiff described her current pain as 9/10. *Id*. Plaintiff was given intravenous fluids and medications, but reported improvement only to 7/10 pain. (Tr. 868). She stated that "she typically needs Dilaudid to feel improved." *Id*. She was given one dose of Dilaudid prior to discharge and told to follow up with her primary care physician and neurologist. (Tr. 868).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On December 28, 2015, Dr. Casanova completed a "Headaches Residual Functional Capacity Questionnaire." (Tr. 543-546.) He indicated he had been treating Plaintiff since 2004, and that he had diagnosed her with chronic migraines. (Tr. 543.) He described Plaintiff's headaches as "unilateral or bilateral, throbbing in character," with accompanying symptoms of nausea/vomiting, photosensitivity, visual disturbances, phonophobia, and mental confusion/inability to concentrate. (Tr. 543). He indicated the frequency of the headaches was daily, with severe headaches two to three times per week. *Id*. In addition, he described Plaintiff's headaches as lasting 24-48 hours in duration. (Tr. 544). He noted that stress triggered the headaches, and that bright lights, moving around, and noise made them worse. *Id*. Lying in a dark room, complete quiet, and prescribed medications made the headaches better. *Id*. Dr.

5

Casanova noted that emotional factors contributed "very much" to Plaintiff's headaches. (Tr. 545). Dr. Casanova checked a box indicating that during times Plaintiff has a headache, she would generally be precluded from performing even basic work activities. (Tr. 545). He indicated Plaintiff was capable of tolerating low stress jobs. (Tr. 546). Dr. Casanova wrote that "[w]hen patient has periods of high stress, her migraine frequency and intensity increases." (Tr. 546). Dr. Casanova opined Plaintiff would likely be absent from work about three times per month, and she had appointments with him every three months. *Id*.

On February 2, 2016, Dr. Hiestand completed a form indicating that Plaintiff suffered from diabetes with complications of peripheral neuropathy and chronic headaches. (Tr. 693). He wrote that Plaintiff's headaches were "frequent + disabling + unpredictable." (Tr. 694). He opined that "[i]t is difficult for someone with chronic headaches to work consistently at a high level. I do not expect her headaches to improve." *Id*.

On August 25, 2016, Dr. Casanova wrote a letter indicating that Plaintiff was "unable to work at this time due to patient having Debilitating Migraines. When patient has these episodes patient is unable to concentrate on what she is doing and what is going on around her."[2] (Tr. 839).

**B. Relevant Hearing Testimony**

At the November 21, 2017 hearing, Plaintiff testified as follows:

- She is 5'3" tall and weighs 216 pounds. (Tr. 44).

- She lives with her mother. (Tr. 45).

- She has a drivers' license with right mirror stipulations due to blindness in her right eye. (Tr. 45). She only has difficulties driving when she has a headache, but does not drive a lot

---

[2] Dr. Casanova wrote an identical letter on October 9, 2017. (Tr. 840).

because she does not trust herself. (Tr. 46).

- She has a high school diploma. (Tr. 46).

- She stopped working around the time of her knee surgery due to increased headaches, which caused her to miss a lot of work even before her surgery. (Tr. 50). She reported trouble with concentration and not meeting work requirements. (Tr. 51). She indicated that since that time her concentration has deteriorated further and even reported memory loss. (Tr. 51).

- She has some level of headaches every single day. Some last for four days. (Tr. 52).

- On a bad day, her headaches cause her to spend 18 hours in bed, she requires assistance getting dressed and bathing, and having to go to the ER. (Tr. 55). Her headaches cause her to vomit twice a week. (Tr. 56).

- Prior to Botox treatment, she ended up in the ER on a monthly basis. (Tr. 56).

- She identified light from a screen as a headache trigger, and, therefore, she did not use a computer at all. (Tr. 61-62).

The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual of the Claimant's age and education with the past jobs that you described. Further assume this individual is limited to a range of light work with the following additional limitations; occasional ramps and stairs; no ladders, ropes, or, scaffolds; frequent balance; occasional stoop, kneel, crouch, and crawl; limited depth perception, just in the right eye; no unprotected heights, moving mechanical parts, or operating a motor vehicle.

(Tr. 69-70). The VE testified that such an individual could perform both of Plaintiff's past relevant jobs as she performed or as similarly performed. (Tr. 70). In addition, the ALJ identified the following jobs that such an individual could perform: mail clerk or sorter, Dictionary of Occupational Titles ("DOT") 209.687-026 (72,000 jobs nationally); office helper, DOT 239.567-010 (92,000 jobs nationally); and, cashier, DOT 211.462-010 (943,000 jobs nationally).

The ALJ posed a second hypothetical keeping all the same restrictions except reducing the exertional level to sedentary. (Tr. 70). The VE testified that Plaintiff's medical receptionist job, both as she performed it and as generally performed would fall under that hypothetical. *Id*. The

claims processor job would also fall under as generally performed, but not as Plaintiff performed it. (Tr. 70-71). In addition, the ALJ identified the following jobs that such an individual could perform: charge account clerk, DOT 205.367-014 (101,000 jobs nationally); information clerk, DOT 237.367-046 (90,000 jobs nationally); and costume jewelry maker, DOT 735.687-034 (165,000 jobs nationally).

The ALJ posed a third hypothetical keeping all the same restrictions with the additional restriction that such an individual "would be limited to simple, routine tasks, but not at a production rate pace." (Tr. 71). The VE testified that such limitations would eliminate Plaintiff's past relevant work. *Id*. However, the VE asserted that "the three light occupations and the three sedentary unskilled occupations that I indicated previously would still fall within the premise of your hypothetical." *Id*.

The VE also testified that employers generally allow about 10 to 12 unscheduled absences per year. (Tr. 71-72). In addition, employers will generally allow an employee to be off task approximately 15% of the workday outside of regularly scheduled breaks. (Tr. 72).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity since May 11, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: obesity, degenerative disc disease, status post total knee arthroplasty, osteoarthritis, migraines,

    and right eye prosthesis (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently balance, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. The claimant has limited depth perception in the right eye. She can have no exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle.

6.  The claimant is capable of performing past relevant work as a claims processor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2015, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

(Tr. 24-31).

## V. Law and Analysis

### A. Standard of Review

  Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Treating Neurologist**

In the first assignment of error, Plaintiff takes issue with the weight the ALJ assigned to the opinions of her treating neurologist, Dr. Casanova, as set forth in a Headaches RFC questionnaire completed on December 28, 2019. (R. 11 at PageID# 962-963; Tr. 543-546).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social

Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the

subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Here, the ALJ addressed Dr. Casanova's opinions as follows:

> Jose Casanova, M.D., the claimant's physician, stated that the claimant had chronic migraines with two to three severe migraines each week (6F/1). Dr. Casanova opined that during a headache, the claimant would be unable to work and she would require unscheduled breaks, although he did not specify how often such episodes might occur (6F/3). Dr. Casanova reported that the claimant was capable of low stress jobs because high stress intensified her migraines (6F/4). According to Dr. Casanova, the claimant would miss work about three times per month (6F/4).
>
> I do not grant controlling weight to Dr. Casanova's opinion. Although he treated the claimant, the record did not confirm the degree of dysfunction that he described. Indeed, his own treatment notes described that the claimant was doing well and her injections were relatively effective. Such facts are incongruent with the inability to work consistently that Dr. Casanova reported. Moreover, the claimant's mental functioning at exams was largely stable and there was little indication that she could not complete tasks at normal stress levels expected in unskilled work. Accordingly, I give Dr. Casanova's opinion only some weight.
>
> Dr. Casanova later stated that the claimant was unable to work due to her migraines because she could not concentrate while having a migraine (22F). I do not give controlling weight to such assessment because the treatment notes documented generally good control over migraines with relatively view [sic] severe instances. Moreover, the claimant did not exhibit impaired concentration even during her hospital visits for migraines. Therefore, I afford little weight to Dr. Casanova's assessment.

(Tr. 29).

The ALJ gives one major reason for discounting the weight accorded to Dr. Casanova's opinions—the inconsistency between the severe and debilitating limitations assessed by Dr. Casanova as compared with his treatment notes. If the ALJ's description is accurate, such inconsistencies certainly could provide a good reason for rejecting a treating source opinion.[3]

---

[3] "Inconsistencies with the treatment notes provide a good reason to not give the treating physician's opinion controlling weight." *Landuyt v. Berry Hill*, 2018 U.S. Dist. LEXIS 51239,

Defendant suggests that the ALJ's characterization was indeed accurate, pointing to Dr. Casanova's own treatment notes describing Plaintiff as "doing well" or stating that her headaches were "well controlled." (R. 12, PageID# 970-971).

The Court agrees with the Commissioner. As noted in the discussion of Plaintiff's medical treatment *supra*, on at least three occasions since the alleged onset date, Plaintiff reported to Dr. Casanova that her headaches were "well controlled" with Botox treatment or Dr. Casanova remarked that Plaintiff's headaches were "well controlled."[4] (Tr. 699, 742, 750). During a February 2017 visit, Plaintiff reported to Dr. Casanova that she was doing well, noting "at least 50% improvement with [Botox] injections." (Tr. 748). During other visits to Dr. Casanova, Plaintiff was noted as doing well. (Tr. 512, 518, 856, 857). In fact, Plaintiff has not pointed to a single visit *with* Dr. Casanova where she reported that she was doing poorly. In sum, the ALJ's observation that the treatment records of Dr. Casanova are inconsistent with his opinions as to Plaintiff's functional limitations are reasonably supported.

Finally, Plaintiff 's argument—that she testified at the hearing that Botox injections had merely broken the cycle of having to go to the hospital on a monthly basis—is an argument that the ALJ was not obligated to accept. Nor does it cure the apparent inconsistency identified by the ALJ between Dr. Casanova's treatment records and his opinions. Moreover, Plaintiff's argument essentially asks the court to override the ALJ's weighing of the medical opinion evidence of

---

\*15 (N.D. Iowa mar. 28, 2018); s*ee also Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at \*14 (S.D. Ohio Feb. 2, 2012) (finding the ALJ gave "good reasons" for discounting a treating physician's opinions "by citing their internal and external inconsistencies and contradictions"), *report and recommendation adopted*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012).

[4] This echoes several statements in Dr. Casanova's treatment notes in 2014 prior to the alleged onset date ("AOD") where Plaintiff was similarly noted to have "well controlled" headaches, suggesting no deterioration of her symptoms after the AOD. (Tr. 522, 528).

record based on the Plaintiff's self-serving hearing testimony. This is tantamount to an invitation for this court to reweigh the evidence and to specifically assign greater weight to Dr. Casanova's opinion rather than an argument that the ALJ failed to provide good reasons for rejecting the opinion. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

Because the ALJ gave good reasons for giving little weight to the opinions of Dr. Casanova, and because the record reasonably supports the ALJ's findings, Plaintiff's contention that the ALJ improperly assessed his opinion is not well taken.

**2. Plaintiff's Credibility**

In the second assignment of error, Plaintiff assert the ALJ erred in evaluating her credibility. (R. 11, PageID# 963-965). Specifically, Plaintiff takes issue with the ALJ not finding her description of her headaches and pain symptoms entirely credible. *Id.*

An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility

finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p (as well as SSR 96-7p which it superseded), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could

reasonably be expected to produce an individual's symptoms, such as pain."[5] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (Tr. 27).

After step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p). The ALJ concluded that Plaintiff's statements were "only partially consistent with the evidence." (Tr. 29).

The thrust of Plaintiff's challenge to the ALJ's credibility is that "the ALJ did not address

---

[5] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

the criteria outlined above," (*i.e.* the seven factors). (R. 11, PageID# 964-965). At a minimum, the decision considered several of the seven factors. With respect to her headache symptoms and limitations, the ALJ expressly noted that:

> The record shows that the claimant had regular headaches and she documented her daily headaches in a log. While I considered such assertions, the objective findings and treatment notes did not establish the degree of symptoms that the claimant reported. Records show that the claimant got generally good relief with Botox injections and she was regularly described as doing well. Moreover, even during hospital visits, she had rarely vomited and she had normal cognitive functioning. Such facts contradict the debilitating frequency and severity of migraines that the claimant alleged.

(Tr. 29). The ALJ also discussed Plaintiff's migraine symptoms and treatment in other portions of the opinion. (Tr. 27-28). Although Plaintiff does not specify in her brief whether she challenges the ALJ's symptomology assessment with respect to pain stemming from her headaches, pain stemming from her knee, both, or pain stemming from some other ailment, the ALJ also discusses the credibility of Plaintiff's knee related pain: "Likewise, the claimant's knee complaints faded over time following her surgery. Her objective findings were largely modest, with only mild swelling but her gait returned to normal." (Tr. 29).

Though a more detailed analysis may have been be preferable, an ALJ is not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g.,* *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179,

at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.).

Here, the ALJ reasonably focused on Plaintiff's treatment for relief of pain and other symptoms, as well as the medical documentation suggesting that Plaintiff was responding favorably to such treatment. SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id.* at *8. Furthermore, Plaintiff fails to offer any meaningful argument as to how greater discussion of her alleged headache and pain symptoms would have necessarily resulted in the conclusion that her self-reported limitations were more credible than found by the ALJ.[6]

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was deficient. Thus, Plaintiff's assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 27, 2019

---

[6] Plaintiff cites no authority for the proposition that an ALJ must discuss each and every alleged limitation separately.